# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**LUCY BORBA**, **a/k/a**                          Chapter 7
**LUCY F. RESENDES,**                          Case No. 14-11614-JNF
     Debtor

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**WARREN AGIN, CHAPTER 7 TRUSTEE**,
     Plaintiff,
v.                                             Adv. P. No. 14-1132
**SENDE RESENDES,**
     Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

## MEMORANDUM

## I. INTRODUCTION

       The matter before the Court is the seven-count Complaint filed by the Chapter 7

Trustee of the estate of Lucy Borba (the "Debtor") against the Defendant, Sende Resendes

(the "Defendant" or "Resendes"), who is the Debtor's older sister.[1]   The Defendant

---

[1] The Trustee's Complaint contains the following misnumbered counts:  Count I (Fraudulent Transfer – Constructive, § 548(a)(1)(B)); Count II (Fraudulent Transfer – Actual, § 548(a)(1)(A)); Count III (Fraudulent Transfer – Constructive M.F.T.A., § 5(a)(2)); Count IV (Fraudulent Transfer – Actual M.F.T.A., § 6(a)); Count V (Fraudulent Transfer – Actual, M.F.T.A., § 5(a)(1)); Count VIII [sic] (Request for Lis Pendens – M.G.L. 184, § 15); and Count IX [sic](Award of Costs).  In addition to filing his Complaint on June 30, 2014, the Trustee filed a Motion for Approval of Lis Pendens.

answered the Complaint, the parties filed a Joint Pretrial Memorandum, and the Court

conducted a trial on February 9, 2016.

At the trial, three witnesses testified and 29 exhibits were accepted into evidence.

The issue presented is whether the Trustee sustained his burden of proving that the

Debtor's transfer of a one-half interest in property located at 630 Cohannet Street,

Taunton, Massachusetts (the "Property") was voidable as either a constructively or

intentionally fraudulent transfer under federal or state law. *See* 11 U.S.C. §§ 544,

548(a)(1)(A), (B), and Mass. Gen. Laws ch. 109A, §§ 5(a)(2), 6(a) and 5(a)(1).

## II. FACTS[2]

In their Joint Pretrial Memorandum, the parties set forth numerous agreed facts

which this Court has supplemented based upon the evidence adduced at trial. On April

10, 2014, the Debtor filed a Chapter 7 bankruptcy petition, although she testified that she

contemplated filing a bankruptcy petition at the beginning of the year.  The U.S. trustee

appointed Warren E. Agin the interim Chapter 7 Trustee on April 11, 2014.

On May 19, 2014, less than six weeks after the Debtor filed her bankruptcy petition,

Green Tree Servicing LLC filed a Motion for Relief from the Automatic Stay with respect

to the Debtor's property located at 107 Tremont Street, Taunton, Massachusetts.  It

alleged that a note and mortgage it held had been in default since March 1, 2012.  Neither

---

The Court heard that Motion on July, 23, 2014, and, in the absence of any objection from
the Defendant, granted the Motion and issued a Memorandum of Lis Pendens.
[2] *The Court may take judicial notice of its own docket. See* <u>LeBlanc v. Salem (In re
Mailman Steam Carpet Cleaning Corp.)</u>, 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy
court appropriately took judicial notice of its own docket.").

the Debtor nor the Chapter 7 Trustee opposed the Motion, and, accordingly, this Court, on June 3, 2014, entered an order granting Green Tree Servicing LLC relief from the automatic stay.  The Trustee subsequently filed a Notice of Abandonment with respect to the Tremont Street property on September 24, 2015.

On July 8, 2014, the Chapter 7 Trustee filed a request for a bar date for filing proofs of claim.  The Court granted the request and established October 7, 2014 as the deadline for filing proofs of claim.  Six creditors filed proofs of claim totaling $28,452.61.  Neither Green Tree Servicing LLC nor the holder of a junior lien on the Debtor's Tremont Street property filed a proof of claim.

With respect to the merits of the Trustee's Complaint, Maria L. Gomes is the mother of the Debtor and her sister, the Defendant.  Luis A. Gomes is the deceased step-father of the Defendant and the Debtor.  Manuel dosSantos conveyed the Property to Luis A. Gomes and Maria L. Gomes as tenants by the entirety and to the Defendant, Sendes [sic] D. Resendes, as joint tenants by deed, dated December 23, 1994, for a stated consideration of $119,900.  The Defendant was a senior in high school at the time the deed was executed.  She continues to reside in the Property; the Debtor resided in the Property until 2004.

Less than six months after the Defendant, her mother and step-father acquired the Property from Manuel dosSantos, the Defendant conveyed her interest in the Property to Luis A. Gomes and Maria L. Gomes as tenants by the entirety for a stated consideration

of $1.00.[3]  On April 7, 1999, Luis A. Gomes and Maria L. Gomes conveyed the Property

by Quitclaim Deed to themselves as Trustees of The Luis A. Gomes and Maria L. Gomes

Family Trust for a stated consideration of $1.00.  Luis A. Gomes died sometime in early

2003.

On July, 7 2003, Maria L. Gomes, as Trustee of The Luis A. Gomes and Maria L.

Gomes Family Trust, transferred the Property to herself, the Defendant, and the Debtor

as joint tenants with the right of survivorship.  Less than two years later, on May 25, 2005,

Maria L. Gomes, the Defendant and the Debtor transferred the Property by Quitclaim

deed to the Defendant.  On that same date, the Defendant refinanced the Property,

executing a mortgage in favor of Mortgage Electronic Registration Systems, Inc.

("MERS") to secure a note in the sum of $95,000 in favor of American Mortgage Network,

Inc.

In addition, on May 25, 2005, the date on which the Defendant became the sole

owner of the Property, Elidio Camara conveyed property located at 107 Tremont Street,

Taunton, Massachusetts to the Debtor for a stated consideration of $241,000. The Debtor

and Matthew J. Borba executed a mortgage in favor of MERS to secure a note, executed

only by the Debtor, to Homecomings Financial, LLC in the sum of $272,000 on the same

day.  On December 22, 2006, they executed an Open End Mortgage to MERS to secure a

note to Homecomings Financial, LLC in the sum of $25,000.

---

[3] The record contains two quitclaim deeds from the Defendant to Luis A. Gomes and
Maria L. Gomes. The deeds appear to be identical except for the date. One is dated
May 3, 1995 and the other is dated October 24, 1995.

The Defendant testified that her mother wished to be removed from the deed to the Property "to get healthcare."  She also testified that the Debtor wished to be removed from the deed because "I believe her home time [sic] -- first-time home buyer or something, I believe."

The Defendant, who resides in the Property with her mother, her husband, and the couple's two children, has made all the regular monthly mortgage payments since May 25, 2005.  Indeed, the Defendant and her spouse, Ricardo Pereira, in addition to caring for Maria Gomes, who is 65 years old, does not speak English, and uses a cane, have paid all real estate taxes, made all insurance payments, and taken care of all repairs and expenses associated with the Property.  The Property is assessed at $192,400 by the City of Taunton, although the Defendant testified that if she were to sell the Property she probably would ask no more than $180,000 for it. The Debtor has never contributed any money toward mortgage payments, real estate taxes, homeowner's insurance or upkeep for the Property.

On or about January 26, 2006, after the Defendant executed the mortgage to MERS with regard to the Property, but before she married Ricardo Pereira, she transferred the Property to herself and the Debtor as joint tenants by Quitclaim Deed for consideration of less than $1.00.  The deed was not dated but it was recorded on January 26, 2006.  The Defendant explained that her mother wanted her daughters to share ownership of the Property.  The Defendant testified as follows:

Q. What was the purpose of that [the January 2006 transfer from the Defendant and the Defendant and the Debtor as joint tenants]?
 A. I believe she wanted to be -- oh, my mother wanted her name back on.

5

Q. Why?
A. She -- she thinks the Portuguese laws and American laws are the same. She just wanted her name back on.
Q. You're going to have to explain that to me.
A. She just -- my mom just wanted her name back on because she had another daughter. I'm not sure --
Q. Did she want you to share --
A. Yes.
Q. – in the house?
A. Yes. Yeah
Q. In case she died?
A. Yeah.

The Debtor testified that she could not recall the reason for the January 2006 transfer.

Title remained in the names of the Defendant and the Debtor as joint tenants until August 15, 2012 when the the Defendant and the Debtor transferred the Property to the Defendant by Quitclaim Deed for a stated consideration of $1.00. Both the Defendant and her husband, Ricardo Pereira, testified that the Debtor approached the Defendant about the transfer and did not provide them with any reasons for her decision. According to them, the Debtor did not discuss either her mortgages on the property located at 107 Tremont Street, Taunton, Massachusetts or any outstanding credit card debt.

As noted above, the Debtor filed a Chapter 7 petition on April 10, 2014. On Schedule A-Real Property, the Debtor disclosed that she has an interest in real estate located at 107 Tremont Street, Taunton, Massachusetts with a market value of $148,694.00, subject to liens securing debt of $300,497.89. In 2012, the City of Taunton Assessor's office valued the property located at 107 Tremont Street at $151,500.00. The Debtor recognized that she was "underwater" on her mortgages and had stopped making

mortgage payments sometime in 2013, although in its Motion for Relief from the Automatic Stay Green Tree Servicing LLC set forth an earlier date of March 1, 2012.

The Debtor listed personal property with a value of $72,419.01 on Schedule B-Personal Property, approximately half of which she claimed exempt on Schedule C-Property Claimed as Exempt. The Debtor disclosed that her 401k retirement plan, to which she ascribed a value of $65,626.40, served as security for loans totaling $32,522.24. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed general unsecured claims in the amount of $45,650.69. On Schedules I and J-Current Income and Expenses of Individual Debtor(s), the Debtor disclosed that she was employed by "Roche Bros. Sudbury Farms" as a grocery clerk and had been so employed for twenty years. She also disclosed that her expenses exceeded her income by $733.21.

On her Statement of Financial Affairs, the Debtor did not list any transfers of property within the two years preceding the commencement of her Chapter 7 case. She, however, did list two collection actions by Discover Bank and Cache, LLC in her Statement of Financial Affairs that resulted in judgments in 2013. Aside from the transfer of her interest in the Property, the Debtor did not sell any assets between August 15, 2012 and April 4, 2014, or transfer any assets in excess of $1,000.00 in value.

The Debtor now lives in Norton, Massachusetts. She testified that she did not make payments toward the mortgage or expenses associated with the Property because she did not live there.

## III. POSITIONS OF THE PARTIES

A. <u>The Trustee</u>

The Trustee urges this Court to find that the Debtor held a fifty percent beneficial interest in the Property at the time she and her sister transferred the Property to the Defendant in 2012.  In addition, he maintains that he established that the Debtor received less than a reasonably equivalent value in exchange for the 2012 transfer and was insolvent at the time of the transfer or as a result of the transfer.  In short, he argues that the 2012 transfer was fraudulent under 11 U.S.C. § 548, that the transfer may be avoided, and that he may recover the Debtor's 50% interest in the property or its value pursuant to 11 U.S.C. § 550 for the benefit of the estate.

The Trustee maintains that the Debtor had a beneficial interest in the Property on and after January 26, 2006 until such time as she and the Defendant transferred that interest to the Defendant.  Citing <u>Citizens Bank of Massachusetts v. Coleman</u>, 83 Mass. App. Ct. 609, 613-14 (2013), he argues that "[t]he 2003 and 2006 transfers were gratuitous transfers to a family member, which creates the presumption of a gift of a beneficial interest."  The Trustee, again citing <u>Coleman</u>, 83 Mass. at 617, adds that it was the Defendant's burden to overcome the presumption by producing sufficient evidence that the intent of the transferor at the time of the transfer was not to convey a beneficial interest, but rather to have the transferee hold the Property as trustee.  The Trustee contends that the Defendant cannot meet that burden because the only evidence presented about the 2006 transfer was that the Defendant transferred an interest in the

Property to the Debtor to please her mother's wish that her daughters share ownership
of the Property.

The Trustee also distinguishes cases cited by the Defendant.  Specifically, he
contends that the decision in The First Nat'l Bank of Boston v. Richmond (In re Gustie),
32 B.R. 466, 469 (Bankr. D. Mass. 1983) aff'd, 36 B.R. 473 (D. Mass. 1984), is inapplicable
because in that case there was an oral agreement that the Debtor, Joseph Gustie, would
hold title to property for the benefit of his brother, Frank Gustie, and that equitable
ownership was to remain with Frank Gustie.

The Trustee also distinguishes Bohm v. Dolata (In re Dolata), 306 B.R. 97 (Bankr.
W.D. Pa. 2004), due to the absence of a resulting trust, which only arises when at the time
property is acquired the purchase price is paid by one person and title is held by another.
He adds that a resulting trust does not arise upon a gratuitous conveyance of land, citing
Gustie, 32 B.R. at 472.

The Trustee also insists that the Debtor received less than a reasonably equivalent
value in exchange for the 2012 transfer.  Comparing either the municipal tax value of
$192,400 or the Defendant's proffered sale price of $180,000 with the current value of the
only lien on the Property, namely the $80,000 mortgage, he asserts that there was at least
$100,000 in equity in the Property and that the Debtor did not receive reasonably
equivalent value for her 50% beneficial interest.

B. The Defendant

The Defendant urges this Court to find that the Trustee failed to establish that the
Debtor was insolvent on August 15, 2012 and that she had various unsecured creditors.

9

Moreover, the Defendant asserts that the Trustee failed to establish that she and the Debtor transferred the property on August 15, 2012 to her with an actual intent to defraud, hinder or delay her past or future creditors.

The Defendant argues that at all relevant times, the Debtor had only bare legal title to the Property and had no equitable interest in it.  She adds that there was no evidence that her mother intended a gift, pointing to her deposition testimony which contained conflicting testimony.  The Defendant relies on decisions such as <u>Clement v. Nickless</u>, 434 B.R. 202 (D. Mass. 2010); <u>Bohm v. Dolata (In re Dolata)</u>, 306 B.R. 97 (Bankr. W.D. Pa. 2004); <u>Geremia v. Dwyer (In re Dwyer)</u>, 250 B.R. 472 (Bankr. D. R.I. 2000); and <u>The First Nat'l Bank of Boston v. Richmond (In re Gustie)</u>, 32 B.R. 466 (Bankr. D. Mass. 1983), *aff'd*, 36 B.R. 473 (D. Mass. 1984).

## IV. DISCUSSION

Section 548(a)(1) provides:

(a)(1) The trustee may avoid any transfer . . . of *an interest of the debtor in property* . . . or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—

(A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii) (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation. . . .

11 U.S.C. § 548(a)(1)(emphasis supplied).  The first issue that the Court must address is the nature of the Debtor's interest in the Property which she and the Defendant transferred to the Defendant on August 15, 2012.  Section 541(d) excludes from property of the estate,

> [p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).  *See* In re LAN Tamers, Inc., 329 F.3d 204, 212-23 (1st Cir. 2003), *cert. denied,* 540 U.S. 1047 (2003)("It is a fundamental principle of bankruptcy law 'that the estate can only succeed to the same property interest that the debtor possesses, and cannot achieve a greater interest.'").  In addition, property and interests in property are determined with reference to state law, in the absence of any controlling federal law. *See* Barnhill v. Johnson, 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); Butner v. United States, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).  Moreover, as the court in In re Leveen, 122 F.Supp. 28 (D. Mass. 1954), *aff'd sub nom.*, Capital Fin. Corp. v. Leveen, 217 F.2d 36 (1st Cir. 1954), recognized:

> A transfer of property by a debtor is not in fraud of his creditors unless it is his own property which is transferred. It is not enough that he should convey to its rightful owner property in which he had no more than a bare legal interest. This is true where the debtor holds the legal title under a purely oral trust for the benefit of a true owner, and voluntarily conveys it to the true owner in fulfilment of the trust, even where the trust, being

purely oral, could not have been enforced against him. 4 *Collier on Bankruptcy*, § 67.30, at p. 266; Frederick v. Baxter Arms Corp., 2 Cir., 107 F.2d 732; Ferguson v. Winchester Trust Co., 267 Mass. 397, 166 N.E. 709, 64 A.L.R. 573; Hutchins v. Mead, 220 Mass. 348, 349, 108 N.E. 67; Briggs v. Sanford, 219 Mass. 572, 107 N.E. 436.

In re Leveen, 122 F. Supp. at 30.  *See also* In re Gustie, 32 B.R. at 471-72.[4]  Nevertheless, "in cases of transfers of property among family members, there is a presumption that a gift is intended." Clemente v. Nickless, 434 B.R. 202, 206 (D. Mass. 2010)(citing Krasner v. Krasner, 362 Mass. 186, 285 N.E.2d 398, 399 (1972) (transfer from husband to wife triggers presumption that gift is intended); Askenaizer v. May (In re Jewett), No. 05-11821-JMD,

---

[4] The court in Gustie stated:

> The issue presented in this case is whether the Bank and the Trustee may set aside the reconveyance by Joseph to Frank which was in fulfillment of their oral agreement. Resolution of this issue requires interpretation of the Massachusetts law concerning the rights of a beneficiary under an oral trust in land where the trust becomes performed. If one orally agrees to hold land in trust for another an express trust is created; however, this oral trust is unenforceable by the transferor against the transferee because the statute of frauds requires that trusts concerning land, except those which arise or result by implication of law, must be evidenced by a written memorandum. Mass. Gen. Laws Chapter 203 Section 1. The oral trust in land is not void, however, merely unenforceable. Ward v. Grant, 9 Mass. App. 364, 401 N.E.2d 160 (Mass. App. 1980). The trustee under the oral trust, although not compelled to do so, is not forbidden to perform the oral trust and may choose to perform his equitable obligation to reconvey. Ward v. Grant, *supra*, at 368–69, 401 N.E.2d at 162. Where the transferee conveys back to the beneficiary, the trust becomes completed and is as valid and enforceable as though it had been evidenced by a writing in the first place; the deed relates back to the oral agreement. Bailey v. Wood, 211 Mass. 37, 97 N.E. 902 (1912). Muhm v. Davis, 580 S.W.2d 98 (Tex.Civ.App.1979). *See* G. Bogert, *The Law of Trusts and Trustees*, Section 469 at 450–52 (2d ed. Supp. 1982); A. Scott, *The Law of Trusts*, Section 42.3 at 321 (2d ed. Supp.1982).

In re Gustie, 32 B.R. at 471-72.

Adv. P. No. 05-1130, 2007 WL 1288740, at *5 (Bankr. D. N.H. May 2, 2007)).   The

presumption is less compelling when the relationship involves in-laws and can be

rebutted by evidence that the transferor did not intend that the transferee acquire a

beneficial interest in the property.   Clemente v. Nickless, 434 B.R. at 206 (citing In re

Jewett, 2007 WL 1288740, at *5; Krasner, 285 N.E.2d at 399, and Dwyer v. Dwyer, 452

Mass. 1030, 898 N.E.2d 504, 506–07 (2008) (reforming trust to reflect settlor's true intent

to retain beneficial interest in property)).

Notably, the Defendant did not point to the existence of any type of oral or written

trust, including a resulting trust or a constructive trust, relative to her 2006 transfer of

one-half interest in the Property to the Debtor, nor could she.   "A resulting trust arises

where a party conveys property under circumstances that raise an inference that she does

not intend for the transferee to receive the entire beneficial interest in the property."

Clemente v. Nickless, 434 B.R. at 205 (citing In re Lan Tamers, 281 B.R. 782, 792 (Bankr.

D. Mass.2002), and the Restatement (Third) of Trusts, § 7).   The court in Clemente added

that "[r]esulting trusts are primarily used to give legal effect to a party's intent at the time

of the transfer, . . . are "generally imposed in either of two circumstances: 1) where an

express trust fails or 2) where there is a 'purchase money conveyance' whereby a transfer

of property is made to one person and the purchase price is paid by another, such that a

trust results in favor of the person who furnished the consideration." Id. (citing, inter alia,

Restatement (Third) of Trusts, §§ 8–9; DiCarlo v. Lattuca, 60 Mass. App. Ct. 344, 802

N.E.2d 121, 125 (2004)).   See also Lambrou v. Lambrou, 87 Mass. App. Ct. 1105, 2015 WL

668456, at *5-6 (2015).

Because neither the Debtor nor the Defendant provided consideration for the purchase of the Property and there was no evidence of an express trust, the circumstances required for the imposition of a resulting trust are absent. Specifically, the Defendant testified that she transferred a one-half interest in the Property to the Debtor in 2006 to effectuate her mother's wishes. "A resulting trust does not arise upon a gratuitous conveyance of land." In re Gustie, 32 B.R.at 47 (citing A. Scott, V *The Law of Trusts*, Section 405, at 3217–20 (3d ed. Supp. 1982)). "The sole circumstance giving rise to a resulting trust in land is where the purchase price is paid by one and the title to the property is taken by another." 32 B.R. at 7. *See also* Lambrou, 2015 WL 668456, at *6; Citizens Bank of Massachusetts v. Coleman, 83 Mass. App. Ct. at 616-17.

Moreover, the Defendant produced no evidence that a constructive trust was imposed prior to the commencement of the Debtor's bankruptcy case. *See* In re Pina, 363 B.R. 314 (Bankr. D. Mass. 2007). In Pina, this court observed that "[t]he Supreme Judicial Court has ruled that '[u]nder Massachusetts law, a court will declare a party a constructive trustee of property for the benefit of another if he acquired the property through fraud, mistake, breach of duty, or other circumstances indicating that he would be unjustly enriched.'" Id. at 323-34.

To repeat, with respect to the 2006 conveyance from the Defendant to herself and the Debtor, the credible evidence was that the Defendant intended to honor her mother's wishes that she and her sister own the family home equally. In other words, the Defendant intended to make a gift of a one-half interest in the Property to her sister, the Debtor. There was no evidence that the Defendant did not intend to make a gift to her

14

sister.  Indeed, at the time of the conveyance, she was the sole owner of the Property and the Debtor was the sole owner of 107 Tremont Street.  Accordingly, the Court finds that the Defendant's reliance on In re Gustie is misplaced as there was no evidence of an oral trust.

In Gustie, the court specifically found that the transfer by Frank Gustie of a home he purchased for himself and his family to the Debtor, Joseph Gustie, was intended to accomplish two purposes: to insure that the home owned by his brother, Frank Gustie was protected from Frank's creditors, and, to insure that Frank Gustie did not jeopardize his equity position in the house because he owed a debt to his father of $25,000.  The court determined that it was orally agreed between the two brothers that the Debtor, Joseph Gustie, would hold title for the benefit of Frank Gustie and his family. There was no agreement as to how long Joseph Gustie was to hold title, but it was agreed that equitable ownership was to remain with Frank Gustie.  In re Gustie, 32 B.R. at 469.  This Court cannot make such a finding in the instant case even though it is undisputed that the Defendant, together with her spouse, made all the mortgage payments and assumed responsibility for the upkeep of the Property.  The conveyance by the Defendant to herself and the Debtor was not circumscribed in any way by the imposition of an oral agreement or trust, even though the Defendant retained indicia of ownership.

The Court also concludes that the other cases relied upon by the Defendant are distinguishable.  The Court is unpersuaded by the decision in In re Dolata as it involved application of Pennsylvania law to a complicated series of transactions, as well as evidentiary presumptions that are not present in the instant case.  In In re Dwyer, the

Rhode Island bankruptcy case cited by the Defendant, the parties, unlike the situation in the instant case, agreed that the debtor held only bare legal title and there were no facts in dispute.  250 B.R. at 474.

In Jensen v. Gillman (In re Gillman), 120 B.R. 219 (Bankr. M.D. Fla. 1990), a case not cited by the Defendant, but similar in some respects to the instant case, the bankruptcy court determined that the debtor, who purchased property with his mother, held only bare legal title and that there was no constructively fraudulent transfer when he transferred his interest in the property back to his mother.  The Florida bankruptcy court adopted the defendant's argument that "the Debtor took legal title to the property only as an accommodation to enable the Defendant to obtain a loan on the property, and that it was agreed that when the Defendant refinanced the property, the Debtor would reconvey the property back to the Defendant. Thus, the Debtor never had anything more than a bare legal title interest in the property and what he transferred had no real economic value."  Id. at 220.

The Debtor proffered little by way of an explanation for why she and the Defendant executed the Quitclaim deed transferring her one-half interest in the Property to the Defendant on August 15, 2012.  She testified that she did not recall any conversation about why she transferred her interest in the Property to the Defendant, while emphasizing that the Defendant was responsible for the Property and was taking care of their mother who does not speak English and has difficulty walking.

With respect to her solvency, the Debtor, admitted that she may have stopped making mortgages payments on the 107 Tremont Street property around the time of the

16

August 2012 conveyance because she owed about the same amounts then as the amounts she set forth on Schedule D of her bankruptcy petition. She also admitted having credit card debt in August of 2012 and that it was possible she was receiving collection calls and letters. That testimony is credible in view of the information on her Statement of Financial Affairs where she listed two collection actions by Discover Bank and Cache, LLC that resulted in judgments in 2013, as well as the representation in the Motion for Relief from the Automatic Stay filed by Green Tree Servicing LLC as to when the Debtor ceased making mortgage payments, i.e., March of 2012.

Based upon the credible evidence and permissible inferences, the Court concludes the Debtor transferred the Property to her sister to protect the Property from the reach of her creditors, not to hinder, delay or defraud those creditors, but rather to protect her sister's family and her mother because it would be unfair to deprive them of the unfettered right to reside in the Property. In recognition of the Defendant's contributions to both the care of their mother, and her assumption of all the responsibilities of ownership of the Property, the Debtor made a gift back to her sister.

Because the Trustee produced no evidence that the Defendant and the Debtor transferred the Debtor's interest in the Property to the Defendant with actual intent to hinder, delay or defraud her creditors, it was incumbent upon him to establish that she was insolvent or rendered insolvent and received less that a reasonably equivalent value in exchange for the transfer. The Court concludes that the Trustee established that the Debtor was insolvent at the time of the transfer and that she received no consideration for the transfer.

17

The Bankruptcy Code defines "insolvent" as the "financial condition such that the sum of [an] entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of (i) property transferred, concealed, or removed with intent to hinder, delay or defraud such entity's creditors; and (ii) property that may be exempted from property of the estate. . . ."  11 U.S.C. § 101(32)(A)).  According to the court in <u>Harrison v. New Jersey Community Bank (In re Jesup & Lamont, Inc.)</u>, 507 B.R. 452, 473 (Bankr. S.D.N.Y. 2014), "[t]here is no presumption of insolvency in a fraudulent conveyance action as there is in the preference statute."  <u>Id.</u>  The court also stated:

> To prove insolvency, a trustee may rely on "balance sheets, financial statements, appraisals, expert reports, and other affirmative evidence." <u>In re Knippen</u>, 355 B.R. 710, 722–23 (Bankr. N.D. Ill. 2006), citing <u>Freeland v. Enodis Corp. (In re Consol. Indus. Corp.)</u>, 292 B.R. 354, 360 (N.D. Ind. 2002). If a trustee shows that the debtor was insolvent at a time subsequent to the date of the alleged fraudulent transfer, the trustee must also show that the debtors' financial condition did not change during the interim period. *See* <u>In re Crawford</u>, 454 B.R. 262 (Bankr. D. Mass. 2011); <u>In re Kaylor Equip. Rental, Inc.</u>, 56 B.R. 58 (Bankr. E.D. Tenn. 1985).

<u>In re Jesup & Lamont, Inc.</u>, 507 B.R. at 473.  In <u>Murphy v. Nunes (In re Terrific Seafoods, Inc.)</u>, 197 B.R. 724 (Bankr. D. Mass. 1996), the court explained the concept of retrojection. It stated:

> Where the debtor's financial condition is unascertainable as of the relevant date, courts often use the principle of retrojection to fill in the gaps. *See, e.g.*, <u>Hassan v. Middlesex County National Bank (In re Mystic Pipe & Supply Corp.)</u>, 333 F.2d 838, 840 (1st Cir. 1964), *cert. denied* 379 U.S. 932, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964). That rule provides that when a debtor was insolvent on the first known date and insolvent on the last relevant date, and the trustee demonstrates "the absence of any substantial or radical changes in the assets or liabilities of the bankrupt between the retrojection dates," <u>id.</u>, the debtor is deemed to have been insolvent at all intermediate times. <u>Foley v. Briden (In re Arrowhead Gardens, Inc.)</u>, 32 B.R. 296, 300 (Bankr. D. Mass. 1983).

In re Terrific Seafoods, Inc., 197 B.R. at 731.

The Trustee introduced the Debtor's bankruptcy schedules which unequivocally demonstrate that the Debtor was insolvent on April 10, 2014.  The Debtor valued her interest in 107 Tremont Street, Taunton, Massachusetts at $148,694, subject to liens totaling $300,497.89, leaving a deficiency of over $150,000.  In addition, she listed credit card debt of $45,650.89.  The Debtor listed her most valuable asset as her interest in a 401k retirement account in the sum of $33,104.16, the total value of which she listed at $65,626.40.  She claimed an exemption in that account and disclosed that it was partially encumbered by secured loans totaling $32,522.24 from her employer, "Roche Bros. Sudbury Farms," for whom she has worked for twenty years as a grocery clerk.  The Debtor also disclosed that her monthly expenses exceeded her monthly income by $733.21.  Based upon that evidence, the Court concludes that the Trustee submitted sufficient evidence of the Debtor's insolvency, particularly where she acquired the 107 Tremont Street property for $241,000 on May 25, 2005 and encumbered it with a mortgage of $272,000 on the same day.  Under those circumstances, the Court concludes that the burden shifted to the Defendant to establish that, in fact, the Debtor was solvent on August 15, 2012.  The Defendant did not introduce any evidence from which this Court could find that the Debtor was solvent in August of 2012.

There was no evidence that the Debtor received anything of monetary value from the Defendant in exchange for the August 15, 2012 conveyance.  Accordingly, the Court concludes that the Trustee sustained his burden under 11 U.S.C. § 548(a)(1)(B).

19

Although the Trustee did not set forth a separate count under 11 U.S.C. § 550(a)(1)((a)("Except as otherwise provided in this section, to the extent that a transfer is avoided under section . . . 548 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--(1) the initial transferee of such transfer or the entity for whose benefit such transfer was made . . . ."), he averred that he was entitled to recover the Debtor's one-half interest in the Property or its value from the Defendant. In view of the evidence of the Property's value, i.e., $180,000 - $192,400, the amount of the outstanding mortgage ($80,000), and the total amount of debt set forth in the proofs of claim on file, the Court shall utilize the Defendant's estimation of value of the Property. As the owner of the home, the Defendant was competent to offer a lay opinion of the home's value. *See* Fed. R. Evid. 701. Accordingly, the Court concludes that, after deducting the amount of the existing mortgage on the Property ($80,000), there is $100,000 in equity in the Property. Upon avoidance, the Trustee shall be entitled to recover from the Defendant the value of the Debtor's interest in the Property for the benefit of the estate which is $50,000.

## V. CONCLUSION

In view of the foregoing, the Court shall enter a judgment in favor of the Trustee and against the Defendant on Count I of his Complaint in the sum of $50,000. Counts II, III, IV, and V are moot. With respect to Count VIII, the Court issued a Memorandum of Lis Pendens on July 23, 2014 so Count VIII is moot as well. With respect to Count IX, the

Court shall enter an order declining an award of costs to the Trustee.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated:  April 7, 2016